| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | **NOT FOR PUBLICATION** |
| In re:<br><br>491 BERGEN ST. CORPORATION, *et. al.,*<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 25-10091 (DSJ)<br>Jointly Administered |

# DECISION AND ORDER DENYING THE ESTATE OF FRANK SOFIA'S MOTION FOR STAY PENDING APPEAL

**APPEARANCES:**

**KLESTADT WINTERS JURELLER**

**SOUTHARD & STEVENS, LLP**

*Counsel to the Debtors and Debtors-in-Possession*

200 West 41st Street, 17th Floor

New York, New York 10036

By:    Tracy L. Klestadt

**OFFIT KURMAN, P.A.**

*Counsel for the Estate of Frank Sofia*

590 Madison Avenue, 6th Floor

New York, New York 10022

By:    Dani Schwartz

1

**DAVID S. JONES**

**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Estate of Frank Sofia's (the "**Frank Estate**" or the "**Estate**") Expedited Motion for Stay Pending Appeal of the Confirmation Order for the Plan of Liquidation of Debtor 139-141 Franklin St. Realty Corp. (the "**Stay Motion**" or the "**Motion**") dated May 30, 2025. Debtor 139-141 Franklin (the "**Franklin Debtor**") filed an objection to the Motion on June 9, 2025 (the "**Debtor's Objection**"). The Frank Estate filed a Reply on June 11, 2025 (the "**Reply**").

## BACKGROUND

Over a century ago, the Sofia family established a self-storage business in New York City. In the 1980s, Frank Sofia, John Sofia and Leonard Sofia each owned one-third of the shares of the following corporations: (i) 139-141 Franklin St. Realty Corp. ("**Franklin**"), the owner in fee of the real property and self-storage facility located at 139-141 Franklin Avenue in Manhattan (the "**Franklin Property**"); (ii) 491 Bergen St. Corp. ("**Bergen**"), the owner in fee of the real property and self-storage facility located at 491 Bergen Street in Brooklyn, New York (the "**Bergen Property**"); (iii) 471 Amsterdam Ave Realty Corp. ("**Amsterdam**"), the owner in fee of the real property and self-storage facility located at 471-475 Amsterdam Avenue in Manhattan (the "**Amsterdam Property**"); (iv) T.J.F. Holding Corp. ("**TJF**"), the owner in fee of the real property and self-storage facility located at 4388-4396 Broadway in Manhattan (the "Broadway Property"); (v) Sofia Bros, Inc. ("**Sofia Bros**"), which manages and operates the self-storage facilities owned by Amsterdam, TJF, and Franklin; and (vi) Peter F. Reilly Storage, Inc. ("**PFRS**"), which manages and operates the self-storage facility owned by Bergen. ECF No. 88 ¶ 7.

2

Frank Sofia, John Sofia and Leonard Sofia entered into Shareholders' Agreements, which provide that "when a shareholder dies, each Corporation is obligated to purchase the decedent's shares of stock in the Corporation in a specified manner, over a specified timeframe, and in an amount calculated pursuant to a specified price formula." *Id* at ¶ 8.  Frank Sofia died in 2021, triggering the provisions of the agreements. Shortly after, the Frank Estate commenced arbitration proceedings against the Corporations, John Sofia and Leonard Sofia. *Id* at ¶ 9. The arbitration resulted in a final award of a sum of $57,145,000.00 plus interest in favor of the Frank Estate (the "**Arbitration Award**" or "**Award**"). *Id* at ¶ 10. The Arbitration Award assessed and awarded separate damages against each Corporation as follows: Franklin ($16,667,000.00), Amsterdam ($21,667,000.00), Bergen ($11,667,000.00), TJF ($5,333,000.00), Sofia Bros ($1,639,000.00) and PFRS ($172,000.00) (collectively the "**Frank Estate Claims**"). *Id.* In October 2024, the Frank Estate commenced an action in New York State Supreme Court to confirm the Award and enter judgment upon it. On December 6, 2024, the state court entered the judgment (the "**Judgment**"). ECF No. 88, Ex. 3.

All six corporations filed voluntary petitions for Chapter 11 relief on January 22, 2025. ECF No. 1. This Court entered an order directing joint administration of the cases. ECF No. 5. On March 20, 2025, Debtors' counsel filed a Chapter 11 Plan of Liquidation for the Franklin Debtor (the "**Plan**"). ECF No. 47. The Plan contemplated a sale of the Franklin Property and a lump payment of one-third of the judgment against the Franklin Debtor, followed by monthly installment payments over ten-years. *Id.* The Frank Estate filed an objection dated April 25, 2025, arguing *inter alia* that the Plan should provide for full satisfaction of the judgment against the Franklin Debtor and that the Frank Estate is entitled to the remaining sale proceeds from the Franklin Property, in so far as the total judgment of over $57 million has not been fully satisfied. ECF No.

3

88. The Franklin Debtor agreed to make a one-time full payment of the $16.67 million judgment, plus accrued interest. However, the parties continued to disagree about what would be the appropriate status and thus treatment of the Frank Estate following the full satisfaction of the judgment against the Franklin Debtor. The Arbitration Award and the Judgment both include provisions addressing the procedure for the Frank Estate to surrender its shares. The Arbitration Award provides that "[u]pon payment of all sums granted herein, Claimant is to surrender its stock interest in the respective Corporations." ECF No. 88-2, Ex. 2. The Judgment provides that "upon payment to Petitioner of all sums required by this judgment, Petitioner shall surrender its stock interest in the Corporations." ECF No. 88, Ex. 3. The Frank Estate argues that the omission of the word "respective" in the Judgment is proof that the Frank Estate is not required to relinquish its shares in any of the corporations until the entire $57 million award is fully paid. At a May 1, 2025 hearing, the Court overruled the Frank Estate's objections and confirmed the Plan. Subsequently, the Frank Estate filed a Notice of Appeal, ECF No. 122, of the Confirmation Order, ECF No. 108, asserting a limited appeal of "the court's determination that, contrary to a state court judgment, Appellant is not entitled to payment of any sums from the liquidating debtor other than sums specifically required and payable by the liquidating debtor under the state court judgment." ECF No. 122, Fn. 2. On June 3, 2025, three days after the Frank Estate filed the Stay Motion, the Court held a conference during which Debtors' counsel informed the court that the sale closing of the Franklin Property and the other Debtors' properties is expected to occur simultaneously, ensuring that the Debtors are sufficiently funded to make the total payment of the $57 million judgment at once. The Court set a briefing schedule and advised the parties that the motion could be determined on the papers.

4

Having reviewed the parties' written submissions, the Court hereby DENIES the Frank Estate's Stay Pending Appeal Motion.

## **DISCUSSION**

A motion for a stay pending appeal from a bankruptcy court's decision is governed by Rule 8007 of the Federal Rules of Bankruptcy Procedure. *Fed R. Bankr. P. 8007*. "The decision as to whether or not to grant a stay of an order pending appeal lies within the sound discretion of the court." *In re Sabine Oil & Gas Corp.,* 551 B.R. 132, 142 (Bankr. S.D.N.Y. 2016). To determine whether or not to grant a stay pending appeal, courts consider the following four factors:

> (1)  whether the movant will suffer irreparable injury absent a stay;
>
> (2)  whether a party will suffer substantial injury if a stay is issued;
>
> (3)  whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and
>
> (4)  the public interests that may be affected.

*In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 346 (S.D.N.Y. 2007) (citing *Hirschfeld v. Board of Elections in the City of N.Y.,* 984 F.2d 35, 39 (2d Cir. 1993)). The movant bears a heavy burden of proof as "[s]tays pending appeal are the exception, not the rule, and are granted only in limited circumstances." *In re Taub,* No. 08-44210, 2010 WL 3911360, at *2 (Bankr. E.D.N.Y. Oct. 1, 2010) (citing *In re Paolo Gucci,* 105 F.3d 837, 840 (2d Cir.1997)). Some courts have held that the moving party must show "satisfactory evidence on all four criteria." *In re Turner,* 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997), *as amended* (Mar. 4, 1997) (quoting *Bijan–Sara Corp. v. Federal Deposit Ins. Corp. (In re Bijan–Sara Corp.),* 203 B.R. 358, 360 (2d Cir. BAP 1996) (internal quotations omitted)). However, in recent times, courts in the Second Circuit have

5

applied a more lenient standard which views "the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *Adelphia,* 361 B.R. at 347. *See also In re Gen. Motors Corp.,* 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009).

Here, in accordance with the latest guidance, the Court will adopt the balancing of factors approach. However, this does not imply that the Court will overlook the Supreme Court precedent establishing that the "most critical" factors are: (i) whether the movant will suffer irreparable injury absent a stay and (ii) whether a party will suffer substantial injury if a stay is issued. *See Nken v. Holder,* 556 U.S. 418, 434(2009). The Court now turns to the four factors:

1. <u>Irreparable Harm</u>

The Frank Estate asserts that denying the Stay Motion would cause irreparable harm to the Estate. They argue that, absent a stay, it would be nearly impossible to recover sale proceeds already distributed to other equity holders, thereby placing their appeal at risk of becoming effectively moot and ultimately subject to dismissal under the doctrine of equitable mootness. Mot. at 20-3.

In its objection, the Franklin Debtor argues that several courts have held that "[t]here is substantial authority, however, that the risk of an appeal being rendered moot does not in and of itself constitute irreparable harm, even if it may be a relevant factor." *In re Bd. of Dirs. of Multicanal S.A.,* No. 04-10280 (ALG), 2005 Bankr. LEXIS 1865, at *6 (Bankr. S.D.N.Y. Jan. 6, 2005) (collecting cases); *see also In re BGI, Inc.,* No. 11-10614 (MG), 2012 WL 5392208, at *6 (Bankr. S.D.N.Y. Nov. 2, 2012), *In re MF Global Inc.,* No. 11-2790 (MG), 2012 WL 5386101, at *3 (Bankr. S.D.N.Y. Nov. 1, 2012).

In response, the Frank Estate primarily relies on *Adelphia,* where a district court acknowledged the lack of consensus among courts concerning whether mootness constitutes irreparable harm. Reply at 4. The *Adelphia* Court ultimately concluded that "loss of appellate rights is a quintessential form of prejudice. Thus, where the denial of a stay pending appeal risks mooting any appeal of significant claims of error, the irreparable harm requirement is satisfied." *Adelphia,* 361 B.R. at *348.* Having said that, Judge Scheindlin also explained that the loss of appellate rights "is not dispositive of the ultimate question of whether to grant a stay pending appeal." *Adelphia,* 361 B.R. at 352 n. 68. *See also In re Cujas,* 376 B.R. 480, 487 (Bankr. E.D. Pa. 2007) ("[T]he existence of such harm is no guarantee that an appellant is entitled to a stay pending appeal. It is also necessary to go one step further and consider the nature of the underlying dispute and the harm that the loss of appellate rights may have on the moving party. That harm must then be balanced against the potential harm other parties may suffer if the stay is granted").

Although the court in *Adelphia* did not explicitly define "significant claims of error," the Court is persuaded that a claim concerning a party's ownership status and equity rights or lack thereof is quite significant and mootness could constitute irreparable harm. For this reason, the Court determines that this factor weighs in favor of granting the stay. Nevertheless, as previously explained, demonstration of irreparable harm is not dispositive of a stay motion.

2. <u>Substantial Injury to Parties if Stay is Granted</u>

The Frank Estate contends that the stay will not cause injury to any party because it would require that only one-third of the residual sale proceeds be held in an escrow amount pending the appeal process. Mot. at 46. Conversely, the Franklin Debtor argues that delaying disbursement of the funds will affect the Debtors' ability to cover its legal and administrative

7

expenses. The Franklin Debtor further argues that "[t]o now delay distribution to the remaining shareholders—who are already set to receive significantly less than the Frank Estate—would result in manifest unfairness and concrete financial harm." Obj. at 22.

The Court is persuaded by the Franklin Debtor's argument. Considering the unpredictability of the length of the appellate process, other shareholders could suffer financial harm due to the diminishing value of funds sitting in an escrow account. The financial harm could be mitigated if the Frank Estate posted a bond. While the Frank Estate maintains that it is not required to post a bond, per the latest amendment of FRBP 8007(c)[1], it does not explain how the shareholders' financial interests will be protected given that escrow accounts generally do not accrue interest or how the Franklin Debtor will not otherwise be harmed by a possibly prolonged deprivation of access to their funds. Reply at 8. Specifically, although the Franklin Debtor did not quantify the expenses that might be underfunded due to an indefinite restriction on one-third of the remaining sale proceeds, it is not unreasonable to infer that untimely payments will affect other parties including professionals who have rendered services to the Debtors. Therefore, the Frank Estate has failed to demonstrate that other parties will not be substantially harmed by the stay. Accordingly, this factor weighs against granting the stay.

3. <u>Substantial Possibility of Success on Appeal</u>

"The substantial possibility of success test is considered an intermediate level between possible and probable and is intended to eliminate frivolous appeals." *In re Sabine Oil & Gas*

---

[1] The Court denied the Stay Motion, and as such, the bond requirement does not need to be addressed.

*Corp.,* 548 B.R. 674, 683-84 (Bankr. S.D.N.Y. 2016) (citing *In re 473 West End Realty Corp.,* 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014)) (internal citations omitted).

In support of the contention that there is a substantial possibility of success of appeal, the Frank Estate put forth the following arguments: (i) the Judgment is clear and unambiguous (ii) the Rooker-Feldman doctrine precludes interpretation of the Judgment (iii) the Franklin Debtor's judicial admission that the Judgment "does not change the Award" prohibits relitigating the Judgment and (iv) the Frank Estate's interpretation of the Judgment is accurate. Mot. at 30-2.

The Frank Estate's arguments are intertwined and are all premised on the contention that this Court was wrong to "follow the logic of the [Judgment]" and rule that "it cannot be the contemplation of the Judgment that one paragraph requires that additional compensation be made to the Estate of Frank Sofia with respect to or on top of the sum certain that the judgment awards to the [Estate] as against [the Franklin Debtor]." Hr'g Tr. 57-8; Mot. at 24.

The Frank Estate's reliance on the Rooker-Feldman doctrine is misplaced for the fundamental reason that this Court's prior decision construed, applied and enforced the prior state court judgment, and did not alter or apply appellate review to it. "The Rooker−Feldman doctrine bars lower federal courts from undertaking appellate review of state court decisions." *In re BHB Enters., LLC,* No. 97-01975-JW, 1997 WL 33344249, at *6 (Bankr. D.S.C. Aug. 27, 1997) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 US. 413 (1923)). "The following requirements must be met for the *Rooker–Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and

9

reject the state-court judgments." *In re Infinity Bus. Grp., Inc.,* 497 B.R. 495, 499 (Bankr. D.S.C. 2013) (internal citations omitted).

Here, the State Court Judgement was entered against the Franklin Debtor before the bankruptcy case was filed in this court, thus factors 1 and 3 are satisfied. Conversely factors 2 and 4 are not met. The Franklin Debtor did not allege that "injuries" were caused by the Judgment and the Court has not been asked to review soundness or validity of the Judgment. Most importantly, this Court certainly did not engage in any form of appellate review of the Judgment; it simply interpreted the text of the Judgment. As such, the Rooker-Feldman doctrine evidently does not apply and the Frank Estate's argument that the Court is prohibited from interpreting the Judgment is misplaced.

Furthermore, the Frank Estate repeatedly argued that the Franklin Debtor admitted in state court that the Judgment did not modify the Award. Mot. at 3; Reply at 2. The Frank Estate fails to explain how it reconciles the fact that the purpose of the Judgment is to confirm and make enforceable the terms of the Award and its argument that the Judgment and the Award provide contradicting results. It defies reason to suggest that the language of an award is inconsequential to the understanding and interpretation of a judgment intended to mirror that award. In sum, this court's confidence in the soundness of its original decision coupled with the unsoundness of the Frank Estate's arguments leads to the conclusion that the Frank Estate has failed to demonstrate a substantial possibility of success on appeal.

    4.    <u>Affected Public Interests</u>

Finally, the Frank Estate argues that there is public interest in comity and deference to state courts, preserving appellate rights, and preventing the other shareholders from obtaining an

excessive recovery. Mot. at 40. These issues have been raised and evaluated in the other factors above. The Court agrees with the Franklin Debtor that public interest favors "finality of decisions, especially in a bankruptcy proceeding" and a speedy and efficient adjudication of matters. *See In re Calpine Corp.,* No. 05- 60200 (BRL), 2008 WL 207841, at *10 (Bankr. S.D.N.Y. Jan. 24, 2008) (internal quotation omitted); *In re de Kleinman,* 150 B.R. 524, 529 (Bankr. S.D.N.Y. 1992). In sum, and particularly in light of the Court's determination that there is no substantial possibility of success on appeal, this Court finds that the public interest is in the efficient administration of the Plan. Thus, this factor weighs against granting the stay.

## **CONCLUSION**

For the reasons stated herein, the Court **DENIES** the Motion.

SO ORDERED.

Dated: New York, New York
      June 16, 2025

                                        *s/ David S. Jones*
                                      Honorable David S. Jones
                                      United States Bankruptcy Judge