| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------X<br>In re:<br><br>491 BERGEN ST. CORPORATION, *et al.,*<br><br><br><br>            Debtors.<br>-------------------------------------------------------------X | <u>FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 25-10091 (DSJ)<br><br>(Jointly Administered) |

### BENCH DECISION AND ORDER[1] ON REMAINING DEBTORS' MOTION TO AUTHORIZE DISBURSEMENT OF FUNDS

**APPEARANCES:**

**KLESTADT WINTERS JURELLER**

**SOUTHARD & STEVENS, LLP**

*Counsel to the Debtors and Debtors-in-Possession*

200 West 41st Street, 17th Floor

New York, New York 10036

By:    Tracy L. Klestadt


**OFFIT KURMAN, P.A.**

*Counsel for the Estate of Frank Sofia*

590 Madison Avenue, 6th Floor

New York, New York 10022

By:    Dani Schwartz

---

[1] The designation of this as a Bench Decision and Order signifies that this decision is drafted and issued in a somewhat informal format in the interest of time, given the time sensitivity of the parties' dispute.

**DAVID S. JONES**

**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the motion [ECF No. 172, the "**Disbursement Motion**"] of Debtors to authorize disbursement of funds from a bankruptcy reserve account. This Bench Decision constitutes the Court's findings of fact and conclusions of law on the Disbursement Motion. The Motion is within this Court's jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). The Court's consideration of the Motion is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. A contention that a pending appeal divests this Court of jurisdiction is discussed and rejected below.

For the reasons stated below, the Disbursement Motion is granted. Briefly, there is no dispute that, if Debtors paid the Estate of Frank Sofia (the "**Frank Estate**") all amounts due on account of a prior judgment upon the closing of simultaneous sales of Debtors' real properties, then under the terms of that judgment the Frank Estate would be entitled to nothing more. The Frank Estate contends that a failure to pay approximately $800 in assertedly due interest on account of a prior arbitration award means they have not received payment in full of their entitlements under the judgment. The Frank Estate further contends that as a result, they are entitled to approximately $6 million, in addition to the roughly $65 million payment they received from Debtors on account of the judgment.

The Court, however, agrees with Debtors that the Frank Estate is equitably estopped from contending that they are owed more than they received, and in particular from contending that Debtors failed to fully satisfy the judgment, because Debtors sought from the Frank Estate a detailed and precise statement of the required "judgment payoff amount," the Frank Estate

2

provided a statement of that amount in writing with no indication that any additional amounts were due, and the Debtors accepted that representation and paid the amount the Frank Estate asserted was due. This was all in a context in which Debtors consistently made clear in repeated communications to the Court and to the Frank Estate that they were attempting to fully satisfy the judgment so as to resolve the Frank Estate's claims. As explained below, the parties had an unambiguous exchange on which Debtors detrimentally relied, and the Frank Estate is not entitled to go back on its word and pull the rug out from under Debtors so as to grab an additional, assertedly due $6 million beyond the judgment amount that the Frank Estate has been paid.

## BACKGROUND

The Disbursement Motion arises against the backdrop of a long-running and seemingly bitter intra-family dispute regarding entitlements to valuable self-storage facilities located in New York City (collectively, the "**Properties**"), each separately incorporated and each a separate debtor in this Court, and all of which for multiple generations have been under the control of members of the Sofia family. Upon the passing of earlier generations who founded and controlled the business, the Properties and associated businesses passed to the ownership of three brothers, who agreed that, upon the death of any of them, the two surviving brothers would buy out the estate of the decedent brother. Following the death of one of the brothers, Frank Sofia, and the survivors' failure to buy out the decedent brother's interests, the Frank Estate initiated arbitration proceedings.

The Frank Estate secured an arbitration award that has been reduced to judgment (the "**Judgment**") against the various Debtors in a total principal amount of approximately $57 million, plus interest. The Judgment appears in the record at ECF No. 88 at Ex. 2. The parties

3

disagree about whether the Frank Estate would be required to surrender its shares in a specific debtor-corporation if that debtor satisfies the judgment amount awarded specifically against it, while the amounts awarded against other debtor-corporations remained due. However, the parties agree that in a circumstance where the total amount awarded against the Debtors is paid simultaneously and in full, the Frank Estate would not be entitled to any additional recoveries beyond the amounts due on account of the Judgment (inclusive of interest). That arbitration award was reduced to judgment before the Debtors commenced their bankruptcy cases.

The Debtors then filed for bankruptcy. One Debtor, referred to as Franklin Street or the Franklin Street Debtor (formally "**139-141 Franklin St. Realty Corp**."), secured confirmation of a plan before the other Debtors did. This Court rejected the Frank Estate's objection based on its contention that it was entitled to additional amounts beyond the judgment amount it holds against the Franklin Street Debtor, and the Frank Estate appealed. In connection with that appeal, the District Court (Kaplan, J.) entered an interim stay order requiring funds to be preserved so as to compensate the Frank Estate in the event the Frank Estate's appeal is successful. The Frank Estate's appeal remains pending in the District Court.

Meanwhile, the bankruptcy cases of the remaining Debtors (the "**Remaining Debtors**") continued to progress, and, following a hearing, on June 27, 2025, this Court entered an order confirming the Remaining Debtors' plans. The Frank Estate objected to confirmation on the ground that, in the Frank Estate's view, it was entitled to additional amounts beyond the judgment amount it was owed by each of the Remaining Debtors, such that it would be impaired notwithstanding the Plans' reliance on their being unimpaired unless they were paid additional funds. The Court in an oral ruling and the ensuing confirmation order required that the Remaining Debtors reserve an additional $6 million (the amount specified on the record by the

4

Frank Estate as necessary to protect its asserted entitlements) to ensure that the Frank Estate could and would be paid in the event it established its entitlement to funds beyond the judgment amount. The Court directed that the $6 million reserve requirement would remain in force solely until July 21, 2025 (after the anticipated sale closings, by when it would be known if the Frank Estate was successfully paid in full), "subject to further application for an extension of the Reserve Deadline, for cause shown, by the Frank Estate." [ECF No. 167 (Confirmation Order) at ¶ 9.] The Frank Estate never applied to extend the Reserve Deadline. And in fact, during the confirmation hearing, counsel for the Frank Estate appeared to agree with the Remaining Debtors' strenuous and long-standing contention that no additional amounts beyond the judgment amount would be due if the sales closed simultaneously and the Frank Estate was paid simultaneously, stating, the "judgment says that we don't have to surrender our stock collectively in any of the debtor corporations until we're paid in full. That would be the $57 million plus interest." [ECF No, 110 ("Confirmation Hearing Transcript") at 28:11-22.]

Against this backdrop, the Remaining Debtors pursued closings on the sales of their respective properties and engaged in email correspondence concerning the total amount due to fully satisfy the Frank Estate's judgment entitlements. The Remaining Debtors succeeded in their efforts to arrange simultaneous post-confirmation sales of all of the Remaining Debtors' Properties.

And, as the sale closings approached, Debtors asked the Frank Estate to identify the required judgment payoff amounts, to be paid from proceeds of the sales. Specifically, by email dated June 26, 2025, Debtors' counsel sent counsel for the Frank Estate an email bearing the subject line "Sofia Brothers Inc. et al. / Estate of Frank Sofia - Judgment Payment Amount Request," the body of which reads as follows:

5

"Counsel:

Please provide on your letterhead in one document the following:

(i)   Payment amount, including (i) principal, (ii) interest through June 30, 2025, and (iii) per diem interest from July 1, 2025 forward, for each of the respective six judgment debtors.

(ii)  Payment amount, including (i) principal, (ii) interest through June 30, 2025, and (iii) per diem interest from July 1, 2025 forward, for all of the six judgment debtors in the aggregate.

(iii) Wire transfer instructions. . . ." [ECF No. 201-1 at Ex. B].

Notably, the email requested "Judgment Payment Amount[s]" without qualification or limitation, and the request cannot be read as anything other than a request that the Frank Estate provide an accurate statement of all amounts that the Frank Estate believed were due on account of the Judgment.

The Frank Estate responded in a letter from its counsel dated June 30, 2025, which did not mention any amounts allegedly due on account of the part of the Judgment that awarded arbitration costs (which had already been paid in the full principal amount with no objection or comment from the Frank Estate about the amount paid). Rather, the Frank Estate's letter responding to Debtors' request for a "judgment payoff amount" stated in the most salient part: "The Judgment, the Franklin Confirmation Order, and the Remaining Debtors Confirmation Order collectively provide for certain indebtedness in favor of the Frank Estate, including allocations specific to each debtor. Our calculations of the foregoing are as follows:". ECF No. 201-1 at Ex. C. The letter proceeded to set forth various amounts which the Frank Estate thus

characterized as constituting the "collective[]" "indebtedness" owed under the Judgment while also stating a general reservation of rights. *Id.*

Debtors' counsel then, on July 14, emailed the Frank Estate's counsel asking for confirmation of amounts due, stating, "Here are our judgment pay-off calculations through July 15th. Please confirm." ECF No. 201-1 Ex. D. Again, this request expressly stated that the amounts being discussed were to be for "judgment pay-off." *Id.* An initial reply from the Frank Estate's counsel appears at Exhibit E to the Debtors' Supplemental Memorandum, and again says nothing about any contention of the existence of any amounts due other than the sums being discussed; counsel merely identified a possible $10,000 discrepancy in a credit amount to be applied. Exhibits F and G provide "updated" figures and a correction, and, in Exhibit H, an email from an attorney for Debtors to counsel for the Frank Estate states, "We accept your calculations." [ECF No. 201-1 at Ex. H.] Counsel for the Frank Estate then replied by email asking for coordinating and contact information to facilitate needed logistics and confirmations for transfers upon the sales' closing, with no further correction as to the amounts that the Frank Estate had agreed to as full Judgment payoff amounts, and no mention of the existence of any other financial obligation under the Judgment. [ECF No. 201-1 at Ex. I.]

In sum, then, Debtors' counsel made unqualified and absolute requests for accurate "judgment payoff" amounts, without limitation – clearly and expressly seeking to be informed of how much money was required to pay off the Judgment in full, both in aggregate and by each debtor. The Frank Estate's responses purport to provide the requested information and, at most, articulate a general reservation of rights, but nowhere suggest that the information supplied is not responsive to Debtors' request for full payoff information. And the Frank Estate's reply at Exhibit C, which was followed only by computation corrections and confirmations, characterized

7

the amounts listed as constituting *the* "indebtedness" due under the Judgment and related documents – an unqualified statement that can only fairly be read as stating the total amount that the Frank Estate believed to be due.

Upon the sales' closing, Debtors transferred the agreed amounts to the Frank Estate in a total amount of roughly $65 million, inclusive of interest — the exact total amount that the Frank Estate had stated was due under the Judgment. The Frank Estate accepted the payment.

Based on this state of affairs, Debtors filed the Motion on shortened notice, contending that because the transactions contemplated by the Plan closed and payoff was made simultaneously, there was no remaining need to maintain the $6 million cash reserve that the Court had directed upon confirmation pending further developments. The Frank Estate opposed, although the Frank Estate did not move to extend the July 21 sunset date of the confirmation order's $6 million cash reserve requirement.

The Frank Estate's opposition contended for the first time that the Judgment had not been fully satisfied because, although Debtors paid the judgment amounts awarded against each debtor, Debtors had failed to pay post-judgment interest on account of a roughly $16,000 arbitration cost award that was also included in the Judgment, which had been paid in the full principal amount months earlier. The amount of interest assertedly due was less than $800. But the asserted consequence of this contention, according to the Frank Estate, was that Debtors continued to owe them $6 *million* more than the "judgment payoff" amount agreed by the parties' pre-closing correspondence. This contention was unforeseen by Debtors and apparently raised for the first time in the Frank Estate's opposition, filed the business day before the hearing on Debtor's expedited motion.

The Court heard the Motion as scheduled but concluded that supplemental submissions were needed in light of the Frank Estate's unexpected claim that it was owed an additional $6 million notwithstanding Debtors' having paid them the full "judgment payoff" amount specified in the parties' pre-closing correspondence. The Court set August 1 as the deadline for supplemental memoranda, which each side submitted [respectively ECF Nos. 200, 201], and which the Court has considered along with the parties' prior submissions, arguments presented during the hearing, and the case's overall history. The Frank Estate's supplemental memorandum, docketed at ECF No. 200, contended not only that it was not estopped from demanding the additional $6 million it now seeks, but also contended that this Court is divested of jurisdiction over the parties' dispute by the District Court's ongoing consideration of the Frank Estate's appeal from the earlier Franklin Street confirmation order, as well as by the Frank Estate's appeal of the order confirming the Remaining Debtors' plans.

As the Court was working on its decision, it reviewed District Court filings in the appeal from the Franklin Street confirmation order, in which the Franklin Street Debtor has requested the District Court to vacate its stay order and monetary reserve requirement in light of the subsequent payment by all the debtors of all amounts they understand to be due under the Judgment. The Court therefore directed the filing of further supplemental submissions discussing whether developments in the District Court appeal from the Franklin Street Debtor's confirmation order affected the jurisdictional divestiture issues that have been raised before this Court. Those supplemental submissions were filed on August 15, 2025, and the Court has considered them.

## **DISCUSSION**

To the extent the parties' dispute were to turn on the proper interpretation of the Judgment, it would be driven by contract-interpretation principles. *See In re 85-02 Queens Blvd. Assocs.*, 212 B.R. 451, 455 (Bankr. E.D.N.Y. 1997) ("As a general rule, judgments are to be construed like other written instruments." (internal citations omitted)). That would lead back into the sort of dispute and appellate process that is already occurring in the Franklin Street Debtor case, in which this Court rejected the Frank Estate's contention that the Judgment gave it an enforceable ongoing shareholder entitlement to recover additional amounts beyond those specified in the Judgment.[2] Indeed, the Frank Estate conceded at argument on the Disbursement Motion that, if the Judgment Amount had been paid in full by Debtors' simultaneous transfers that occurred at the time of the closings of the sales of the debtors' properties, then the Frank Estate would have no entitlement to any additional payment. *See* Hr'g. Tr. 26-27. That concession would eliminate any remaining dispute if it were not for the Frank Estate's contention that the alleged failure to pay post-judgment interest in the amount of roughly $800 on the $16,000 arbitration fee award portion of the judgment rendered Debtors' payment incomplete, and, thus, rendered the Frank Estate entitled to a $6 million payout in addition to the roughly $65 million that Debtors already paid them in satisfaction of the "judgment payoff" amount that the Frank Estate itself specified shortly before the closing.

Debtors' primary response, however, is that the Frank Estate is equitably estopped from asserting the additional $6 million entitlement that it now raises, because it misrepresented the

---

[2] The Frank Estate's contention, put differently, is that the Judgment does not require the Frank Estate to relinquish its shares in the Franklin Street Debtor unless the roughly $57 million judgment against all Debtors is paid at the same time, even if the sum certain amount against the Franklin Street Debtor is paid*, and* seemingly also that as a result they are entitled to additional sale proceeds beyond the Judgment amount by virtue of their asserted continuing entitlement to own their shares.

10

"payoff amount" as being the roughly $65 million that Debtors paid to the penny, and because Debtors detrimentally relied on that misrepresentation or statement in rendering full payment, with the expectation that doing so would resolve all disputes with the Frank Estate and would leave Debtors with the remaining, additional proceeds. As stated in this Bench Decision's introduction, the Court agrees.

1. Equitable Estoppel

Equitable estoppel is a doctrine that "is grounded in notions of fair dealing and good conscience and should be applied where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *In re Jiminez,* No. 98-4471 (JMP), 2008 WL 2026147, at *7 (Bankr. S.D.N.Y. May 9, 2008) (internal citations omitted); *see also In re Texaco Inc.,* 254 B.R. 536, 560 (Bankr. S.D.N.Y. 2000). Under the doctrine, a party can be equitably estopped from asserting a position or entitlement if three elements are present: (a) the party to be estopped made a misrepresentation of fact to the other party with reason to believe the representation would be relied on; (b) the other party reasonably relied on the representation to its detriment; and (c) the party to be estopped had actual or constructive notice of the true facts. *Jiminez* at *7; *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 301 (2d Cir. 1996). The party claiming estoppel must also establish that: (a) it lacked knowledge and the means of learning the truth of the facts in question; (b) that it relied on the conduct (or statement) of the party to be estopped; and (c) that it acted in a manner that showed a prejudicial change of its position. *Onamuga v. Pfizer, Inc.*, 369 F. Supp. 2d 491, 500 (S.D.N.Y. 2005).

All of these elements are present here. First, the parties' correspondence includes clear, affirmative statements of fact by the Frank Estate that payment of specified amounts would

constitute the "judgment payoff amount." That was an unqualified, clear statement, which had been requested by Debtors for the known purpose of arranging a full payoff of the Judgment in connection with the closing of the properties' sale. This statement qualifies as a misrepresentation of the amount the Frank Estate contends was due as full payoff of its entitlements. The statement of the Frank Estate cannot be squared with its contention now, in a breathtaking "gotcha" attempt, to say Debtors actually owed them an additional $800, with the result that Debtors assertedly owe them $6 million more than the "judgment payoff amount." The Frank Estate contends its silence as to the asserted unpaid interest of less than $800 does not constitute a misrepresentation or concealment of material fact because "a party's silence does not give rise to a claim of equitable estoppel when the party has no duty to speak." ECF No. 200 at 11 (citing *Gaia House Mezz LLC v. State St. Bank & Trust Co.,* 720 F. 3d 84, 90 (2d Cir. 2013). However, the Second Circuit recognizes that "[t]he New York law of estoppel is that the duty to speak need not be a purely legal one, [] but rather may be founded in principles of ethics and good faith…." *Columbia Broad. Sys., Inc. v. Stokely-Van Camp, Inc.,* 522 F.2d 369, 378 (2d Cir. 1975) (internal citations omitted). Therefore, even if the Frank Estate did not have a legal duty to speak, when the Debtors asked for the "judgment payoff amount," the Frank Estate should have included the roughly $800 interest amount it believed it was entitled to.

Second, Debtors reasonably relied on the Frank Estate's statement of the total payoff amount due. Debtors' correspondence "accepted" the Frank Estate's calculations and paid that exact amount, in the clear expectation that this would resolve the Frank Estate's claims against Debtors. There is no chance Debtors would have paid that amount while leaving themselves exposed to additional claims. Had Debtors known that the Frank Estate contended $800 more

12

was due, Debtors would have paid that amount rather than grapple with ongoing demands for millions more.

And third, the party to be estopped – the Frank Estate – had "actual or constructive notice" of the assertedly true facts. In fact, the Frank Estate objects that Debtors had the same knowledge based on the face of the Judgment. But it is Debtors who asked the Frank Estate for its computation of the total judgment amount due, and the Frank Estate provided the numbers on which Debtors relied. If the Frank Estate believed additional amounts were due, it at a minimum had constructive knowledge of that fact.

Finally, the requirements of *Onanuga* are also present here. The Debtors were evidently not aware that the Frank Estate would not accept a full payment of the "judgment payoff amount" it agreed to as a complete satisfaction of the Judgment. As already discussed, the Debtors made a good faith effort to ensure that they fully satisfied their obligations under the Judgment by asking the Frank Estate for its own calculations of the "judgment payoff amount." Given the Frank Estate's affirmative statements via email correspondence, there was no way for the Debtors to have known that the Frank Estate believed it was owed an additional $800. Furthermore, as explained above, Debtors prejudicially relied on the Frank Estate's representation of the total "judgment payoff amount." Thus, all requirements of equitable estoppel are present here, and the Frank Estate is estopped from continuing to pursue its asserted entitlement to millions more than the amount it represented would fully satisfy the Judgment.

    2.     Divestiture Doctrine

The Frank Estate objects to the Disbursement Motion on the alternate ground that this Court lacks subject matter jurisdiction to decide the Motion based on the divestiture doctrine. The

13

Frank Estate contends that its pending appeal of the Remaining Debtors' Confirmation Order and the Franklin Street Debtor's pending motion to vacate the District Court's Interim Stay Order in the Frank Estate's appeal from the Franklin Street Debtor's earlier confirmation order divest this Court of subject matter jurisdiction because they "present issues that are inextricably linked with those now before this Court." ECF No. 200 at 6. The Frank Estate's appeals center on disputes about when the Frank Estate is required to relinquish its shares in the debtor-corporations, with the seemingly agreed premise that the Frank Estate's relinquishment of shares will eliminate any entitlement it may otherwise have to any additional sale proceeds above the Judgment amount. The question in the Franklin Street Debtor appeal essentially is whether relinquishment of shares in any of the debtors is required only upon payment of the total amount awarded by the Judgement, or whether the Frank Estate is required to surrender its shares in each debtor-corporation at the time when the amount awarded specifically against such debtor-corporation is paid.

In general, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the [trial] court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982). "The divestiture doctrine, in its simplest terms, provides that the filing of an appeal divests the lower court of its control over the issue or matter that is on appeal. Courts have held that the same legal principle applies to appeals of bankruptcy court orders." *In re Sabine Oil & Gas Corp.,* 548 B.R. 674, 679 (Bankr. S.D.N.Y. 2016) (internal citations omitted).

However, while an appeal of an order is pending, a bankruptcy court is not divested of jurisdiction to enforce or implement the challenged order. "This is true because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains

14

intact for the appellate court to review." *In re Prudential Lines, Inc.,* 170 B.R. 222, 243 (S.D.N.Y. 1994). As a result, courts have "recognized a distinction in the divestment of jurisdiction between acts undertaken to enforce the judgment and acts which expand upon or alter it; the former being permissible and the latter prohibited." *Id.* (citing *N.L.R.B. v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir.1987). "Thus, it has long been held that in the absence of a stay pending appeal of the plan confirmation, the bankruptcy court is entitled to implement the plan." *Id.* at 244 (collecting cases).

First, the Frank Estate's appeal from the Franklin Street Debtor's confirmation order has no jurisdictional impact on the Court's consideration of a motion in the case of the Remaining Debtors, which turns on the requirements of those debtors' plan and confirmation order, and on the Frank Estate's entitlements against the Remaining Debtors. The Franklin Street Debtor's motion seeking to terminate a stay in the Franklin Street appeal turns on overlapping facts – the fact that Debtors now collectively have fully paid all amounts due under the Judgment in the exact amount calculated by the Frank Estate – but that is in service of the question whether amounts required by the District Court to be preserved in light of obligations under the Franklin Street plan and the Judgment must continue to be maintained. That differs from the question whether the separate $6 million that this Court directed be reserved on account of the Frank Estate's asserted entitlements against the Remaining Debtors still needs to be maintained.

Nor does the pendency of a new appeal by the Frank Estate from confirmation of the Remaining Debtors' plan divest this Court of jurisdiction. Rather, the Disbursement Motion is exactly the sort of plan-enforcement or plan-implementation order that remains within this Court's authority and jurisdiction even during the pendency of the Frank Estate's appeal from confirmation. The Debtors have not requested a modification of the appealed-from Confirmation

15

Order – the type of application that likely would be barred under the divestiture doctrine. Instead, Debtors seek a decision and order simply enforcing the terms of the court's prior order, which provided that the requirement to maintain a $6 million reserve would expire on July 21, 2025, subject to the Frank Estate's ability to request an extension for cause shown. And, as noted, the Frank Estate has made no such extension request. The *Prudential Lines* and *Cincinnati Bronze* cases thus are squarely on point: because the Frank Estate failed to seek to extend the confirmation order's reserve requirement, that requirement has expired by its own terms, and this Court retains authority to direct that the Confirmation Order should be adhered to as written.

To reiterate by way of emphasis, the Reserve was established on a time-limited basis to protect the Frank Estate's claim of entitlement to residual sale proceeds in the event that the total amount due under the Judgment was not paid in full and all at once. The Frank Estate expressly and in writing told the Remaining Debtors what the remaining "judgment payoff amount" was, and Debtors paid that exact amount. The Frank Estate is equitably estopped from asserting a claim which it failed to raise throughout the course of this case and specifically during the correspondence between the parties about the payoff amount, on which Debtors reasonably relied. Thus, the Frank Estate's entitlement under the Judgment has been fully satisfied. In fact, the Frank Estate, as already discussed, conceded on the record that a full payment of the judgment amount would preclude any claims to additional entitlements beyond the amount due under the Judgment. *See* Hr'g. Tr. 26-27. And the divestment doctrine does not preclude this Court's ability to enter orders for the purpose of enforcing or implementing its prior orders, even those that are subject to an appeal.

In sum, then, the divestiture doctrine does not limit this Court's ability to decide the Disbursement Motion on its merits, and the Frank Estate is equitably estopped from disputing Debtors' showing that they have now fully paid off their Judgment obligations.

## CONCLUSION

For the reasons stated above, the Motion is GRANTED. Debtors are to submit a proposed order to effectuate this ruling. The Frank Estate's time to appeal shall begin to run upon entry of such a separate order.

    IT IS SO ORDERED.

Dated: New York, New York
       August 20, 2025

                                    *s/ David S. Jones*
                                HONORABLE DAVID S. JONES
                                UNITED STATES BANKRUPTCY JUDGE